**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **STATE FARM FIRE & CASUALTY** | ) | |
| **INS. CO. a/s/o CIARA TARONJI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1:22-cv-01753** |
| | ) | |
| **TECHTRONIC INDUSTRIES NORTH** | ) | |
| **AMERICA, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFF STATE FARM'S OPPOSITION IN RESPONSE TO DEFENDANT'S
MOTION TO EXCLUDE OPINIONS OF PLAINTIFF'S EXPERT, JIM SOBOTA**

Pursuant to Federal Rules of Civil Procedure 403 and 702, Plaintiff State Farm Fire & Casualty Ins. Co., as subrogee of Ciara Taronji, response to the motion filed by Defendant Techtronic Industries North America, Inc.:

## TABLE OF CONTENTS

**OVERVIEW**                                                                      **Pg. 3**

**ARGUMENT**                                                                      **Pg. 4**

    **A. Sobota is not qualified to testify competently regarding  potential failure**   **Pg. 5**
       **modes or defects associated with lithium-ion batteries.**

    **B. Sobota's defect opinions rest on unreliable methodology.**       **Pg. 5**

    **C. Sobota's defect opinions – which are nothing more than an**       **Pg. 7**
       **impermissible ipse dixit opinions – will not assist the trier of fact.**

    **D. Sobota's defect opinions are inadmissible under Rule 403.**       **Pg. 7**

    **E. Sobota used unreliable methodology to "rule out" other**       **Pg. 7**
       **possible sources of ignition.**

**F.  Sobota's opinions related to ruling out alternative ignition sources**   Pg. 9

**will not assist the trier of fact.**

**G.  Sobota's opinions on ruling out alternative ignition sources are**   Pg. 10

**inadmissible under Rule 403.**

**CONCLUSION**   Pg. 10

<u>**OVERVIEW**</u>

Jim Sobota is a Certified Fire & Explosion Investigator, Certified Vehicle Fire Investigator specializing in determining the origins, causes, and circumstances of structural, vehicular, and marine fires; experienced in explosion investigations, fire protection analysis, plan review, fire investigation training, and law enforcement; collaborative background with local, state, and federal government agencies; Retired Fire Investigation Branch Commander, thirty-two years of dedicated service with the Fairfax County Fire Department, which includes seventeen years in the capacity of Assistant Fire Marshal; hold expert witness qualifications in fire origin & cause investigations. Currently serving as a senior fire investigator with Fire & Arson Investigation Consultants (FAIC) (Sobota CV – Exhibit A).

Mr. Sobota was retained by Plaintiff to investigate and examine a fire loss in the basement of 412 Vermont Ave. Hagerstown, Md. 21740. As a result of that investigation and examination, Mr. Sobota drafted an investigative report ("Sobota Report – Exhibit B") which, in part, details his conclusive opinions as to the cause and origin of the subject fire based up his training, investigation, and his application of the industry standard *NFPA 921, Guide for Fire & Explosion Investigation, 2018 edition (*"NFPA"*)*.

Defendant seeks to exclude Jim Sobota from offering the following opinions as an expert witness (Defendant's Daubert Motion for Jim Sobota ¶ 5 – Exhibit C):

1.  *The cause of the fire resulted from the ignition of combustible materials, as a result of a failure of a lithium-Ion battery cell(s).*

2.  *The material(s) first ignited were the batteries combustible liquid electrolyte.*

3.  *The act or omissions that brought the ignition source and the material first ignited together resulted from a catastrophic failure of lithium-Ion battery cell(s).*

4.  *All other possible sources of ignition were considered and ruled out during the course of our investigation.*

(These four aforementioned opinions are enumerated is sequential order as 2 – 5 in Defendant's Daubert Motion for Jim Sobota ¶ 7)

## ARGUMENT

A cause and origin expert's method of ruling out alternative ignition sources is in no way tantamount to "speculation" (Defendant's Daubert Motion for Jim Sobota ¶ 7). A comprehensive site examination, complete with interviewing eyewitnesses and assessing alternative ignition sources, conforms with the scientific, technical, and specialized knowledge of the NFPA. The common term used, cause and origin of the fire, is somewhat of a misnomer when applied to fires involving products and specialized fields of electrical and mechanical engineering as well as material science.  The fire expert is called on to focus the area of fire origin to the smallest point possible and attempt to determine as cause while ruling out others ignition sources.

The cause of the fire can be as simple as an improperly discarded cigarette or more complicated as a found in a defect in a lithium-ion battery.  When it comes to a relatively sophisticated product, the fire expert will defer the specific cause of the product failure and fire to experts with specialized knowledge, such as an engineer.  That this what occurred in this case.  Mr. Sobota determined the area of fire origin to be the metal shelf in the utility room, found the most competent ignition source to be the lithium-ion batteries sitting on that shelf at the time of and ruled out all other ignition sources.

What may be lost in Defendant's motion, is that Defendant fire expert, Scott Barnhill, agrees with Mr. Sobota's area of fire origin, "shelf 1 of the double width shelving system to the left of the

utility room doorway when entering the utility room. Based on the Fire Marshal's investigation report, the FAIC report and Mr. Sobota's deposition transcript, and the undersigned, there appears to be a consensus that the origin of the fire is on shelf 1" (Barnhill Report p. 9 – Exhibit D)  Based on the physical evidence, recreation of the fire scene, and testimony there only ignition source on Shelf 1 at the time of the fire was the Ryobi lithium-ion batteries.

**A. Sobota is not qualified to testify competently regarding potential failure modes or defects associated with lithium-ion batteries.**

Plaintiff consents to Defendant's argument regarding Mr. Sobota's inability to competently regarding potential failure modes or defects associated with lithium-ion batteries.  While Mr. Sobota has significant experience in the field of forensic fire investigations, he does not possess sufficient knowledge, experience and training as to the potential internal defects and potential failure modes of lithium-ion batteries.  Plaintiff seeks only to prefer Mr. Sobota's opinions and findings as to the area of fire origin and that the Ryobi batteries were the only ignition source in the area of origin at the time of the fire.  Plaintiff's will rely on its electrical engineering expert, Christoph Flaherty to establish the presence of an internal defect within the subject batteries and the cause of the fire.

**B. Sobota's defect opinions rest on unreliable methodology.**

As stated by Defendant, for fire investigations specifically, the Fourth Circuit has recognized and applied the standards set forth in NFPA 921 to evaluate the reliability of an expert's principles and methodology. *Fireman's Fund Ins. Co.*, 767 F. Supp. 2d at 554. Reliable fire investigations require the investigator "to collect data about the fire 'by observation, experiment, or other direct. . . means,' to analyze the data objectively and without speculation, to develop a hypothesis based solely on the data collected, to test the hypothesis by comparing it to all known

facts, and to repeat the process until all feasible hypotheses have been tested." Id. (citing NFPA 921 4.3.3 – 4.3.6).

> Q. Okay. What texts or treatises do you consider authoritative in the field of as an investigator in a fire origin and cause expert?

> A. 921 as a standard of care, current fire and investigations manual.

> Q. Any others?

> A. I can't think of any right now.

> Q. So we have got NFPA 921. That's the fire Bible, right?

(Sobota Deposition pp. 23 – 24 – Exhibit E)

Defendant criticizes Mr. Sobota's methodology as improper but acknowledges the source material from which Mr. Sobota draws his methodology as the "fire Bible." Meaning that to all parties, Mr. Sobota's application of NFPA meets the standard of care for a fire cause and origin expert's examination and assessment of a fire cause and origin.

Defendant seeks to override Mr. Sobota's opinion as to the internal failure leading to the batteries being the first fuel ignited theory with an external fire attack theory when Mr. Sobota has consistently opined that conclusively there is no evidence of an outside, or alternative, thermal event that created a fire that could have attacked the batteries causing them to combust. Mr. Sobota is resolute that there was no other instrument, tool, and/or unilateral fuel source in the area of the fire loss that could have, on its own, contained and subsequently released, or otherwise created, enough thermal energy to attack the batteries, causing them to explode.

"[Proponents] do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable. . . The evidentiary requirement of reliability is lower

than the merits standard of correctness." *Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579 (1993). NFPA is well established as a reliable and renowned instrument for investigators to assess and pinpoint the cause and origin of a fire scene by ruling out alternative ignition sources at a given source. It is only when an investigator lacks the evidence to rule out any given possible ignition source that that investigator is instructed to rule the cause of the fire as indeterminate.

Defendant contends that because "Sobota is not an engineer and, thus, is not qualified to render those opinions." (Defendant's Daubert Motion for Jim Sobota ¶ 2). Neither Daubert, nor Rule 702, require a person intending to give expert testimony to hold any specific title in order to testify as an expert on that subject. Instead, when the person purporting to be an expert on a given subject gives testimony, that "expert's testimony must be 'ground[ed] in the methods and procedures of science' and 'supported by appropriate validation—i.e., `good grounds,' based on what is known.'..." *Higgins v. Diversey Corp.*, 998 F.Supp. 598 (D. Md. 1997). Mr. Sobota has specific knowledge and he laid out in his report and subsequential in his deposition his opinions and conclusions regarding the fire based upon what was known to him; that knowledge in addition to his study and application of NFPA at the fire scene allowed him to develop a theory for the cause and origin of the fire—that being the internal malfunction and thermal runaway of the batteries.

**C. Sobota's defect opinions – which are nothing more than an impermissible ipse dixit opinions – will not assist the trier of fact.**

Plaintiff takes the same position as it did in response to Argument A, regarding Defendant position concerning Mr. Sobota's findings and opinions as to the existence of a defect within the subject batteries.

**D. Sobota's defect opinions are inadmissible under Rule 403.**

Plaintiff takes the same position as it did in response to Argument A, regarding Defendant position concerning Mr. Sobota's findings and opinions as to the existence of a defect within the

subject batteries.

**E. Sobota used unreliable methodology to "rule out" other possible sources of ignition.**

Defendant claims Mr. Sobota's findings and opinions are based on improper methodology because he failed to consider improperly discarded cigarettes and a soldering iron as viable ignition sources in the area of fire origin.

Defendant's primary argument as to ruling out an improperly discarded cigarette as the cause of the fire is based entirely on the idea that Mr. Sobota's interview of Mr. Fernandez, as it pertains to Mr. Fernandez's smoking habits, is in and of itself an unreliable source of information by virtue of it being witness testimony.  Defendant alleges that Mr. Fernandez's testimony about where and when he smoked on the day of the fire could be a lie.

Mr. Fernandez's testimony cannot inherently be presumed unreliable because in other instances witness testimony has been found to be unreliable or contrary in other, unrelated matters. Further, the relevant portions of Mr. Fernandez's testimony as it pertains to Defendant's motion and improperly discarded cigarettes as a possible alternative ignition source to the batteries is particularly reliable because it is uncontradicted from Mr. Sobota's interviews of Mr. Fernandez and Mr. Fernandez's depositions by the Defendant. Mr. Fernandez has maintained that he never smoked cigarettes in his utility room. In fact, Mr. Fernandez testified that he smoked outside of the basement door and only brought his cigarettes in the home to extinguish them in an ashtray, can, or other receptacle on his desk.  The uncontradicted evidence is that Mr. Fernandez only smoked on the exterior of the home and extinguished cigarettes in a separate room where all experts and the Fire Marshal agree the fire originated.  (Fernandez Deposition pp. 93 – 94 – Exhibit F)

As Defendant acknowledges in ¶3 of the Improperly Discarded Smoking Materials section of its Motion to Exclude Mr. Sobota that no cigarettes were found in the utility room; that shot glasses, ash trays, and metal cans were observed and photographed throughout the basement with

discarded cigarettes, but none in the utility room, at or near the area of origin. Without witness testimony to prove a cigarette was discarded on shelf 1 where all agree the fire originated, the Defendant is left with trying support the argument as to ignition sources other than the lithium batteries with physical evidence or the lack thereof.  Defendant's expert, Mr. Barnhill concludes that a cigarette is a viable ignition source in the area of origin because "a Pall Mall cigarette can be consumed by a fire." (Barnhill Report p. 13) This opinion and attack on Mr. Sobota's ability to rule out a cigarette as to the cause of the fire amounts to mere speculation and is without merit.

Plaintiff's experts, Mr. Sobota and Mr. Flaherty worked together in reaching their opinions as to the cause of the fire.  This manner of investigation is quite common when performing a joint forensic examination of a fire scene and physical evidence. Experts can rely on other expert's opinions and findings in forming their own opinions. As found in Mr. Sobota's deposition, he relied on Mr. Flaherty to rule out the soldering iron. "The soldering iron had its power cord wrapped around it and was not plugged in." (Flaherty Report p. 5 Section 3.3 ¶ 5 – Exhibit G)

Q. Do you know whether the soldering iron that was on shelf one was on or energized at the time of the fire?

A. No, I don't. And I had notes in my -- from the lab inspection that the solder iron was supposed to be X-rays. I believe C.J. was going to take care of that. I haven't got the results of that. (Sobota Deposition pp. 87 – 88)

Both Mr. Sobota and Mr. Flaherty findings and opinions ruling out all ignition sources other than the Ryobi batteries was based on reliable methodology.  Defendant's argument to exclude this opinion should fail.

**F. Sobota's opinions related to ruling out alternative ignition sources will not assist the trier of fact.**

The testimony that Mr. Sobota will offer to the trier of fact is at its core the gravamen of this

litigation. Mr. Sobota's opinions as to the origin and source of the fire is not only relevant to assisting the trier's understanding of how the fire began and where it occurred, but his understanding of the fire scene and the possible ignition therein will assist the trier in weeding out the extraneous contents of the shelf and allow the trier to focus on the relevant features of the fire scene that will be depicted through the trial. Mr. Sobota's expertise is in fire cause and origin. Accordingly, his testimony is valuable for educating the trier on what could and could not have started the subject fire.

**G. Sobota's opinions on ruling out alternative ignition sources are inadmissible under Rule 403.**

Mr. Sobota's testimony stands to explain and describe to the trier of fact relevant evidence about the subject batteries' failure and role in causing the Taronji's damages. At present, there is nothing in the record to suggest that the probative value of Mr. Sobota's testimony, as it pertains to the ignition source and the location and area of the fire, is outweighed by any prejudice it would create. Prejudice is concerned with the trier of fact is faced particularly set of evidence that creates an undue tendency for that trier to make a decision on an improper basis. "'Undue tendency to suggest decision on an improper basis...'" *U.S. v. Queen*, 132 F.3d 991 (4th Cir. 1997). Here, Mr. Sobota's testimony would give the trier of fact a reasoned, studied, constructive basis for assessing the location of the fire's origin and the ignition source present in that location.

<u>**CONCLUSION**</u>

Mr. Sobota's opinions and testimony should not be ruled unreliably speculative because he opines on battery failure as the cause of the fire based upon fire scene and ignition analysis while not being an engineer or because he considered eyewitness testimony in the formulation of his conclusions on this subject fire.

Respectfully Submitted,

/s/ Charles J. Fratus

Charles J. Fratus, Esq. #13169

FRATUS LAW GROUP, LLC

566 Baltimore Annapolis Blvd.

Severna Park, MD 21146

(P) 410.295.7100

(F) 844.240.1557

(E) chuck@fratuslaw.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2024, I served the foregoing document to all counsel of

record in a manner authorized by Federal Rule of Civil Procedure.

Jeffrey J. Hines (Bar No. 03803)
Sean D. Harding (Bar No. 22354)
GOODELL, DEVRIES, LEECH AND DANN LLP
One South Street, 20th Floor Baltimore, MD 21202
(410) 783-4000
(410) 783-4040 Facsimile jjh@gdldlaw.com sharding@gdldlaw.com

J. Chandler Bailey (admitted *pro hac vice*) cbailey@lightfootlaw.com
Christopher C. Yearout (admitted *pro hac vice*)
cyearout@lightfootlaw.com

H. Ben Brown III (admitted *pro hac vice*) bbrown@lightfootlaw.com
LIGHTFOOT, FRANKLIN & WHITE, LLC
The Clark Building 400 North 20th Street
Birmingham, Alabama 35203
(205) 581-0700
(205) 581-0799 (fax)
**Attorneys for Defendant Techtronic Industries North America, Inc.**

/s/ Charles J. Fratus
Charles J. Fratus