IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **STATE FARM FIRE & CASUALTY INS. CO. a/s/o CIARA TARONJI,**<br><br>Plaintiff,<br><br>v.<br><br>**TECHTRONIC INDUSTRIES NORTH AMERICA, INC.,**<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)      Civil Action No. 1:22-cv-01753<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF STATE FARM'S OPPOSITION IN RESPONSE TO DEFENDANT'S MOTION TO EXCLUDE OPINIONS OF PLAINTIFF'S EXPERT, C.J. FLAHERTY**

Pursuant to Federal Rules of Civil Procedure 403 and 702, Plaintiff State Farm Fire & Casualty Ins. Co., as subrogee of Ciara Taronji, response to the motion filed by Defendant Techtronic Industries North America, Inc.:

**TABLE OF CONTENTS**

**OVERVIEW** — Pg. 3

**ARGUMENT** — Pg. 3

   A. **Qualification** — Pg. 3

   B. **"Ruling Out" Methodology** — Pg. 5

   C. **Permissibility and Admissibility of Mr. Flaherty's Opinions under Rule 403** — Pg. 8

**CONCLUSION** — Pg. 8

**OVERVIEW**

Christoph J. Flaherty is an electrical and professional Engineer, specializing in examining and assessing electrical systems, instruments, and tools for their use, design, functionality, and/or failure mode(s). Mr. Flaherty has been an electrical engineer for 30 years with an undergraduate degree in physics from Tufts University and main the masters degree in electrical engineering from the Naval Academy. (Flaherty CV – Exhibit A)

Mr. Flaherty was retained by Plaintiff to investigate and examine a fire loss in the basement of 412 Vermont Ave. Hagerstown, Md. 21740. As a result of that investigation and examination, Mr. Flaherty drafted an investigation report (Flaherty Report – Exhibit B) which, in part, details his conclusive opinions as to the failure mode of the Ryobi batteries as the cause of the subject fire; this based up his training, education, investigation, study, and his application of the industry standard *NFPA 921, Guide for Fire & Explosion Investigation, 2018 edition (*"NFPA"*).*

Defendant seeks to exclude C.J. Flaherty from offering the following defect-related opinions as an expert witness (Defendant's Daubert Motion for C.J. Flaherty – Exhibit C):

1. *The Taronji-Fernandez residence fire was caused by the thermal runaway of the Ryobi 6 amp-hour 40-volt lithium battery Mr. Fernandez had used and charged earlier on the same day.*
2. *The thermal runaway of the Ryobi battery was most likely caused by the development of an internal short circuit in one of the cells due to a manufacturing defect.*
3. *Other possible sources of ignition in the area of fire origin on the shelving unit in the basement utility room of the Taronji-Fernandez residence were considered and ruled out.*

(These three aforementioned opinions are enumerated is sequential order as in the Flaherty Report)

**ARGUMENT**

**A.     Qualification**

Defendant claims that: "With (1) no specialized training on lithium-ion batteries, (2) no experience designing or developing lithium-ion batteries, (3) no education on lithium-ion batteries, and (4) no non-consulting professional work related to lithium-ion batteries, Flaherty is not

qualified to render opinions in this case" (Defendant's Daubert Motion for CJ Flaherty Section A ¶ 4). Neither Daubert, nor Rule 702, require a person intending to give expert testimony to hold any specific title in order to testify as an expert on that subject. Instead, when the person purporting to be an expert on a given subject gives testimony, that "expert's testimony must be 'ground[ed] in the methods and procedures of science' and 'supported by appropriate validation—i.e., `good grounds,' based on what is known.'..." *Higgins v. Diversey Corp.*, 998 F.Supp. 598 (D. Md. 1997). Given Mr. Flaherty's formal credentials and the testimony he offered in deposition performed by Defendant, the content which he intends to offer as an expert witness in court, is grounded in evidence obtained scientifically. Mr. Flaherty employed the scientific method and adhered to the methods laid out by NFPA 921. Mr. Flaherty formal education and training as an electrical energy allows him to be well versed in a multitude of electronics, electrical power sources, and electrical systems—include lithium-ion batteries and their chargers. (Flaherty CV)

Mr. Flaherty's training and experience as an electrical engineer allows him to access a fire loss and the evidence therein to determine if an electrical implement was the source of a fire; he needn't be specific training in any one source of electricity or any one electronic to determine thermal runaway and internal failure when there is no evidence of an external source of attack. Defendant's supposition that Mr. Flaherty has no education on lithium-ion batteries does not reflect the testimony given by Mr. Flaherty to the Defendant in Defendant's deposition of Mr. Flaherty. Mr. Flaherty included the following sources in the reference section of his Investigative Report:

- Jeevarajan J, Safety Limitations Associated with Commercial 18650 Lithium-ion Cells, Lithium Mobile Power and Battery Safety, 2010
- Mikolajczak C, Kahn M, White K, Long RT, Lithium-Ion Batteries Hazard and Use Assessment, The Fire Protection Research Foundation, July 2011
- Nagourney T, Jordan J, Laban M, Dennis S, May B, The Implications of Post-Fire Physical Features of Cylindrical 18650 Lithium-Ion Battery Cells, Fire Technology, 2021
- Ouyang D, Chen M, Liu R, Wei R, Weng J, Wang J, Investigation of a Commercial

>LithiumIon Battery Under Overcharge/Over-discharge Failure Conditions, RSC Advances, 2018

(Flaherty Report p. 8)

And Mr. Flaherty included the following in his deposition:

- Building Better Batteries, Nature and 7th, February of 2008, written by M. Armand and J.M. Tarascon.
- History Evolution and 3 Future Status of Energy Storage from the Proceedings of IEEE, volume 100, May 13th, 2012, by M. Stanley Wittingham.
- Investigation of a Commercial Lithium-ion Battery Under Overcharge/Over Discharge Failure Conditions.
- Journal: RSC Advances from 2018
- There's Issues and Challenges Facing Rechargeable Lithium Batteries, Nature, November 2001 by J.M. Tarascon and M. Armand.
- Lithium Battery Failures under Electropedia
- Lithium Ion Cell Protection, December of 2015, Dave Knight, Digi-Key
- Lithium Ion 18650 Battery Failures by Robert Morley
- Safety Limitations Associated with Commercial 18650 Lithium-ion Cells, Jee Varajan
- Thermal Runaway-Caused Fire and Explosion of Lithium-ion Battery, Journal of Power Sources 2012
- Linden's Handbook of Batteries, 5th Edition
- Implications of Post-Fire Physical Features of Cylindrical 18650, Lithium-ion Battery Cells, Fire Technology, 2021, Nagourneyt

(Flaherty Deposition pp. 24 – 30)

**B.    "Ruling Out" Methodology**

Mr. Flaherty's methodology involved: A process of elimination by ruling out alternative causes; Evidentiary approaches of NFPA 921; Examination of exemplar Ryobi batteries; Inspection of the Taronji-Fernandez residence on May 28, 2020; Computed tomography (CT) scanning of recovered battery remnants on October 7, 2020; Joint examination of evidence recovered from the Taronji-Fernandez residence on December 20, 2022.

Mr. Flaherty's method of ruling out alternative ignition sources is in no way tantamount to "unabashed speculation" (Defendant's Daubert Motion for C.J. Flaherty Section B ¶ 1). The process of elimination by ruling out alternative sources/causes is a long held and generally accepted

4

scientific and engineering practice and satisfies *Daubert's* reliability test as being accepted by the relevant scientific community.

This theory of recovery, called the "malfunction" or "indeterminate defect" theory, allows a factfinder to infer that a product defect caused a plaintiffs injury where circumstantial evidence tends to rule out other causes, such as misuse or alteration of the product. *Harrison v. Bill Cairns Pontiac*, 549 A.2d 385, 590 (Md. App.1988). Recovery under the indeterminate defect theory is conditioned upon the weighing of five factors: (1) expert testimony as to possible causes; (2) the occurrence of the accident a short time after the sale; (3) same accidents in similar products; (4) the elimination of other causes of the accident; (5) the type of accident that does not happen without a defect. *Fireman's Fund Ins. Co. v. Tecumseh Prods. Co.*, (D. Md. Mar 02, 2011). Severe fire damage and/or destruction of the product is why the decision in *Harrison* was reached and cited as good law for the past 25 years. Just as with the present case, a product malfunction causes the loss or destruction of the product, leaving the parties without direct evidence of the product's condition. leaving the plaintiff without direct evidence to establish its claim.

Plaintiff's expert Jim Sobota in tandem with Mr. Flaherty are prepared to testimony, as they have written and submitted in their respective reports, to the lack of evidence supporting any other possible causes – improperly discarded smoking material, soldering iron, extension cords, etc… The Ryobi batteries were purchased by Mr. Fernandez the Ryobi batteries in question, new, on March 28, 2020, and Plaintiff is evidencing their failure on May 19, 2020. Mr. Flaherty reports and testifies to, not only readings, but to similar investigations he's personally conducted of thermal runaway in lithium-ion batteries. The Flaherty Report details Mr. Flaherty's process in eliminating any and all other causes of the subject fire (see Flaherty Report pp. 4-6). And the Flaherty Report details how a thermal runaway is not the type of accident that occurs in the absence of a defect (see Flaherty Report pp. 5-7). As detailed herein, Mr. Flaherty's testimony meets all five (5) factors of

the "indeterminate defect" test and, as such, cannot rightly be deemed "speculation."

Mr. Flaherty maintains based up a comprehensive site examination, witness testimony, ruling out the possibility of any other ignition source, and Computed Tomography (CT scan) of the 20 recovered battery cells, the subject lithium-ion batteries failed internally due to manufacturing defect that caused a thermal runaway which lead to rapid internal ignition of the lithium-ion battery cells in the Ryobi battery. In Section 3.2 of the Flaherty Report, Mr. Flaherty describes that the CT scan revealed "widespread internal electrode damage due to thermal runaway."

> "The Ryobi 6 amp-hour 40-volt lithium battery that Mr. Fernandez had used, charged, and then placed on the shelf the morning of the fire showed clear signs of thermal runaway. The plastic components of the battery pack were completely consumed in the fire, several of the cells ruptured and ejected their electrode "jelly roll," and CT scanning showed extensive internal damage to all cells. Thermal runaway occurs when the current flow and chemical reactions within a battery cell cause uncontrollable self-heating, eventually leading to cell venting, rupture, and/or flaming combustion. Thermal runaway can be caused by overcharging, over-discharging followed by charging, internal or external short circuits, and excessive environmental temperatures. Recently manufactured lithium battery operated tool systems, such as the Ryobi chain saw, battery, and charger used by Mr. Fernandez on the morning of the fire, generally contain protective circuitry to prevent overcharging and over-discharging. They also usually prevent charging a battery that has become over-discharged. Individual cells are also protected by a positive temperature coefficient device (PTC) and a current interrupt device (CID). The PTC devices and CIDs protect single cells but have been shown to offer insufficient protection to prevent thermal runaway when cells are connected in a series/parallel arrangement to form a battery pack." (Flaherty Report Section 4 ¶ 4)

Defendant seeks to call into question Mr. Flaherty methodology and conclusions because in his deposition he did not pinpoint one reason, photograph, source, or piece of evidence that singularly or unilaterally proved internal failure of the battery.

Q.   Mr. Flaherty, are you able to point me to a photograph, a CT image or are you able to point me to any physical evidence that indicates to you or indicates to anyone a manifestation of a short circuit internal to a battery cell that resulted in a thermal runaway?

A.   Not directly, no. That conclusion is based on the consideration of the entirety of the

available evidence, fire scene, history of the pack, et cetera.

(Flaherty Deposition p. 134 – Exhibit D)

True to *Daubert*, Mr. Flaherty asserts based upon his examination of all available and possible ignition sources in the Taronji's utility room, including the absence of any improperly discarded smoking material, the extension cords present in the area of origin, and any other corded electronic, that no other source could have created the fire or have been the first fuel ignited either because that source was no present in the case of the smoking material or those other instruments were not energized at all or sufficiently to create a fire that could externally attack the Ryobi batteries. Thus creating "a valid scientific connection to the pertinent inquiry [was there an internal or external attack on the batteries] as a precondition to admissibility." *Nease*, 848 F.3d at 229 (citing *Daubert*, 509 U.S. at 597). Further, the "indeterminate defect" approach does not allow for an expert to point to one single cause or source to formulate a conclusion or to confirm a hypothesis.

C.     **Permissibility and Admissibility of Mr. Flaherty's Opinions under Rule 403**

Mr. Flaherty's testimony stands to explain and describe to the trier of fact relevant evidence about the subject batteries' failure and role in causing the Taronji's damages. At present, there is nothing in the record to suggest that the probative value of Mr. Flaherty's testimony is outweighed by any prejudice it would create. Prejudice is concerned with the trier of fact is faced particularly set of evidence that creates an undue tendency for that trier to make a decision on an improper basis. "'Undue tendency to suggest decision on an improper basis..." *U.S. v. Queen*, 132 F.3d 991 (4th Cir. 1997). Here, Mr. Flaherty's testimony would give the trier of fact a scientific, studied, constructive basis for assessing the complexity of internal failure by way of thermal runaway in lithium-ion batteries.

## **CONCLUSION**

Mr. Flaherty's opinions and testimony should not be ruled unreliable speculation as he utilized a valid approach in testing his hypothesis concerning the Ryobi lithium-ion battery cells' failure mode in the formulation of his conclusion that the lithium-ion batteries were the cause of this subject fire.

Respectfully Submitted,

/s/ Charles J. Fratus
Charles J. Fratus, Esq. #13169
FRATUS LAW GROUP, LLC
566 Baltimore Annapolis Blvd.
Severna Park, MD 21146
(P) 410.295.7100
(F) 844.240.1557
(E) chuck@fratuslaw.com
*Attorney for Plaintiff*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 9th, 2024, I served the foregoing document to all counsel of record in a manner authorized by Federal Rule of Civil Procedure.

Jeffrey J. Hines (Bar No. 03803)
Sean D. Harding (Bar No. 22354)
GOODELL, DEVRIES, LEECH AND DANN LLP
One South Street, 20th Floor Baltimore, MD 21202
(410) 783-4000
(410) 783-4040 Facsimile jjh@gdldlaw.com sharding@gdldlaw.com

J. Chandler Bailey (admitted *pro hac vice*) cbailey@lightfootlaw.com
Christopher C. Yearout (admitted *pro hac vice*)
cyearout@lightfootlaw.com

H. Ben Brown III (admitted *pro hac vice*) bbrown@lightfootlaw.com
LIGHTFOOT, FRANKLIN & WHITE, LLC
The Clark Building 400 North 20th Street
Birmingham, Alabama 35203
(205) 581-0700
(205) 581-0799 (fax)
***Attorneys for Defendant Techtronic Industries North America, Inc.***

                                                                          */s/ Charles J. Fratus*
                                                                          Charles J. Fratus