## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| **STATE FARM FIRE & CASUALTY INSURANCE, CO.** a/s/o CIARA TARONJI, | * <br> * <br> * <br> * <br> * |
| **Plaintiff** | * <br> * |
| **v.** | Civ. No. MJM-22-1753 <br> * <br> * |
| **TECHTRONIC INDUSTRIES NORTH AMERICA, INC.,** | * <br> * <br> * |
| **Defendant.** | * <br> * |

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff State Farm Fire & Casualty Insurance Company ("Plaintiff"), as subrogee of Ciara Taronji, filed this civil action against defendant Techtronic Industries North America, Inc. ("Defendant") to recover for damages arising from a fire that occurred at Taronji's residence. Complaint, ECF 2. Plaintiff alleges that the source and origin of the fire was a lithium-ion battery manufactured by Defendant. *Id.* ¶¶ 6, 9.

This matter is before the Court on Defendant's motions to exclude opinions of Plaintiff's fire investigation and electrical engineering experts (ECF 28 & 30) and motion for summary judgment (ECF 31). The motions are ripe for disposition, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, Defendant's motion to exclude the opinions of Plaintiff's fire investigator shall be granted in part and denied in part; Defendant's motion to exclude the opinions of Plaintiff's electrical engineer shall be denied; and Defendant's motion for summary judgment shall be granted in part and denied in part.

1

## I.    BACKGROUND

On May 19, 2020, a fire occurred in the basement utility room of a residence owned by Ciara Taronji in Hagerstown, Maryland ("the subject property"). Report of James Sobota ("Sobota Report"), ECF 28-1, at 1, 4. Plaintiff, the insurer of the property, hired fire investigator James Sobota as to investigate the fire and provide an expert opinion regarding its origin and cause. Deposition of James Sobota ("Sobota Dep."), ECF 28-2, at 11:9–13, 14:9–13. Plaintiff also hired electrical engineer C.J. Flaherty to assist in the fire investigation. Deposition of Christoph J. Flaherty ("Flaherty Dep."), at 8:7–14. Defendant hired its own expert, K. Scott Barnhill, to investigate the cause of the fire. Report of K. Scott Barnhill ("Barnhill Report"), ECF 38-5, at 1.

Sobota's investigation began with an examination of the exterior of the subject property and then an inspection of the interior, starting with the least fire-damaged parts of the residence and ending with the most damaged. Sobota Report at 4. The inspection revealed that the fire began a metal shelf in the basement utility room. *Id.* Sobota investigated the subject property's electrical system, HVAC, water heater, and an extension cord in the utility room, but found no anomalies. *Id.* At the time of the fire, there was a Ryobi-brand lithium-ion battery pack (the "subject battery pack") on a shelf in the utility room. *Id.* at 5; Sobota Dep. at 75:16–77:10.

Sobota conducted an interview with Taronji's partner, Juan Fernandez ("Fernandez"), who worked in the basement on the date of the fire and stored various tools in the utility room. *Id.* Fernandez had purchased the subject battery pack on March 28, 2020. Deposition of Juan Fernandez ("Fernandez Dep."), at 53:21–54:6. Fernandez used the subject battery pack with his chainsaw the morning of May 19, 2020. Sobota Report at 5; Sobota Dep. at 115:13–116:6. Thereafter, he charged the subject battery pack, Sobota Report at 5; Sobota Dep. at 115:13–116:6, and then returned it to the shelf in the utility room at approximately 9:30 a.m., Sobota Report at 5;

Sobota Dep. at 75:16–77:10. According to Sobota, Fernandez smoked cigarettes at his desk in the basement at approximately 4:15 p.m. and left the subject property a few minutes later. Sobota Report at 5; Sobota Dep. at 116:8–14.[1] The fire began at approximately 6:18 p.m. Sobota Report at 5; Sobota Dep. at 116:15–20.

Flaherty assisted in the fire investigation. Flaherty Dep. at 8:7–14. The metal shelving in the utility room contained paint and wall-patching supplies, alkaline batteries in a plastic container, tiles, a router/modem, and a soldering iron with a power cord wrapped around it. Flaherty Engineering Investigation Report ("Flaherty Report") at 5; Flaherty Dep. at 71:7–18. The burned remnants of the subject battery pack were also found in the utility room. *Id.* at 3–4. Flaherty conducted computed tomography ("CT") scans of the subject battery pack remnants on October 7, 2020, and a joint examination of the physical evidence from the fire with Sobota on December 20, 2022. *Id.* at 2. The CT scans "revealed widespread internal electrode damage due to thermal runaway" and many of the cells had ejected their "internal electrode 'jelly roll.'" *Id.* at 4. "Thermal runaway occurs when the current flow and chemical reactions within a battery cell cause uncontrollable self-heating, eventually leading to cell venting, rupture, and/or flaming combustion." *Id.* at 6. According to Flaherty, "[t]hermal runaway can be caused by overcharging, over-discharging followed by charging, internal or external short circuits, and excessive environmental temperatures." *Id.*

Sobota concluded that the fire originated on one of the metal shelves in the basement utility room, to the left of the entrance; that the cause of the fire was "the ignition of combustible materials" resulting from a "failure" of lithium-ion battery cells in the subject battery pack; that

---

[1]    Fernandez rejects the contention that he smoked in the home, testifying that he did not recall saying that to Sobota during the interview, but he *does* admit that he would leave discarded cigarettes in an ashtray in the basement. Fernandez Dep. at 86:1–94:8. Fernandez does not deny that he may have discarded a cigarette in the basement at approximately 4:15 p.m. on the day of the fire.

the first materials to ignite were the battery's "combustible liquid electrolyte"; that this ignition was a result of "a catastrophic failure" of the subject battery pack; and that alternative causes of ignition were considered and ruled out. Sobota Report at 6–7.

Flaherty concluded that the cause of the fire was the thermal runaway of the subject battery pack; that the thermal runaway was caused by a manufacturing defect in the subject battery pack that resulted in an internal short circuit in one of the battery cells; and that alternative causes of the fire were considered and ruled out. Flaherty Report at 7.

Barnhill conducted his own investigation and review of the evidence, concurred with Sobota that the origin of the fire was on one of the shelves in the basement utility room, and opined that two of the potential causes of the fire were the subject battery pack and improperly discarded cigarettes. Barnhill Report at 13. He concluded that the improperly discarded cigarettes could not be ruled out as a potential source of the fire. *Id.* at 14.

On June 15, 2022, Plaintiff filed this subrogation action against Defendant in the Circuit Court of Maryland for Washington County. ECF 2. Plaintiff alleges that the fire at the subject property was caused by a design defect and manufacturing defect in the subject battery pack and asserts claims for negligence, strict products liability, and breach of implied warranty. *Id.* On July 18, 2022, Defendant removed the case to the U.S. District Court for the District of Maryland and filed its Answer, denying all claims. ECF 1 & 5. Following the close of discovery, Defendant filed a motion to exclude Sobota's opinions, ECF 28; a motion to exclude Flaherty's opinions, ECF 30; and a motion for summary judgment, ECF 31. Plaintiff filed oppositions to all three motions, ECF 37, 38, & 39; and Defendant filed replies in support of its motions, ECF 40, 41, & 42.

4

**II.     MOTIONS TO EXCLUDE EXPERT OPINIONS**

### A.  Standard of Review

District courts are tasked with making preliminary determinations as to the qualifications of experts and the relevance and reliability of their testimony. *See* Fed. R. Evid. 104(a) & 702; *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 597 (1993); *Kumho Tire v. Carmichael*, 526 U.S. 137, 141 (1999); *Nease v. Ford Motor Co.*, 848 F.3d 219, 229–30 (4th Cir. 2017). Courts act as gatekeepers "to protect the judicial process from 'the potential pitfalls of junk science,'" *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 275 (4th Cir. 2021) (quoting *United States v. Bonner*, 648 F.3d 209, 215 (4th Cir. 2011)), and are given wide latitude in this role. *See Kumho Tire*, 526 U.S. at 141.

The party seeking to admit expert testimony bears the burden of establishing admissibility by a preponderance of the evidence. *Fireman's Fund Ins. Co. v. Tecumseh Prods. Co.*, 767 F. Supp. 2d 549, 553 (D. Md. 2011) (citation omitted). Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

The Supreme Court has identified a non-exhaustive list of guideposts to be considered in a *Daubert* analysis, including:

> (1) whether the particular scientific theory has been or can be tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) whether there are standards controlling the method; and (5) whether the technique has gained general acceptance in the relevant scientific community.

*Lins v. United States*, Civ. No. ELH-17-2163, 2024 WL 1604494, at *19 (D. Md. Apr. 12, 2024) (citing *Daubert*, 509 U.S. at 593–94). Importantly, the foregoing factors "do *not* constitute a definitive checklist or test, and the gatekeeping inquiry must be tied to the particular facts . . . . Those factors may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire*, 526 U.S. at 138 (citing *Daubert*, 509 U.S. at 591, 593).

## B.  Fire Investigator Frank Sobota

Sobota, a fire investigator, came to the following conclusions following his investigation on the cause and origin of the fire at the subject property:

> 1. The area of fire origin was located within the basement level utility room, more specifically on metal shelfing located to the left as one would enter the room.
>
> 2. The cause of the fire resulted from the ignition of combustible materials, as a result of a failure of a lithium-Ion battery cell(s).
>
> 3. The material(s) first ignited were the batteries combustible liquid electrolyte.
>
> 4. The act or omissions that brought the ignition source and the material first ignited together resulted from a catastrophic failure of lithium-Ion battery cell(s).
>
> 5. All other possible sources of ignition were considered and ruled out during the course of our investigation.

Sobota Report at 6–7. Defendant concedes that Sobota was qualified to render the first opinion and that it is relevant. ECF 28 at 5. Plaintiff concedes that Sobota was not qualified to render opinions "regarding potential failure modes or defects associated with lithium-ion batteries." ECF 38 at 4. Accordingly, the Court finds Sobota's second, third, and fourth opinions to be unreliable and therefore inadmissible. Only remaining issue is the admissibility of Sobota's fifth opinion. Defendant argues that Sobota used unreliable methodology in ruling out other potential sources of the fire and improperly ruled out discarded cigarettes and the soldering iron as alternative causes. ECF 28 at 14–15.

Both parties and Sobota himself agree that the accepted standards for fire investigation are set out in the National Fire Protection Associate 921 Guide for Fire and Explosion Investigations ("NFPA 921"). ECF 28 at 9; ECF 38 at 4; Sobota Dep. at 23:22–24:9; *see also Fireman's Fund*, 767 F. Supp. 2d at 554 (finding that a fire investigator's opinion should be excluded where he does not follow the procedures set out in NFPA 921) (citing *Bryte ex rel. Bryte v. Am. Household*, 429 F.3d 469, 478 (4th Cir. 2005), and *Fireman's Fund Ins. v. Canon U.S.A.*, 394 F.3d 1054, 1060 (8th Cir. 2005)). NFPA 921 prescribes an application of the scientific method to fire investigations, *id.* (citing NFPA 921 4.1–4.5), and forbids fire investigators from opining as to the cause of a fire without first following the steps of the scientific method prescribed therein, *see Fireman's Fund*, 767 F. Supp. 2d at 554 (citing NFPA 921 4.3.3–4.3.6).

"In broad strokes, a fire investigator complying with [NFPA 921's methodological standards] will define the problem; collect data; analyze all data collected; develop a hypothesis based on the empirical data and inferences drawn from the data and the investigator's knowledge, training, or experience; test the hypothesis; and reach a conclusion." *Adell Plastics, Inc. v. Mt. Hawley Ins. Co.*, Civ. No. JKB-17-00252, 2019 WL 2524916, at *5 (D. Md. June 19, 2019).

> A fire or explosion investigation may include all or some of the
> following tasks: a scene inspection or review of previous scene
> documentation done by others; scene documentation through
> photography and diagraming; evidence recognition, documentation,
> and preservation; witness interviews; review and analysis of the
> investigations of others; and identification and collection of data or
> information from other appropriate sources.

*Severn Peanut Co. v. Indus. Fumigant Co.*, No. 2:11-CV-14-BO, 2014 WL 1056991, at *2–3

(E.D.N.C. Mar. 17, 2014), *aff'd*, 807 F.3d 88 (4th Cir. 2015) (quoting NFPA 921 § 4.4.3.2).

"Testing of a hypothesis may take many different forms[,]" *id.* (citing NFPA 921 § 4.3.6), and may

include "any application of fundamental principles of science, physical experiments or testing,

*cognitive experiments*, analytical techniques and tools, and systems analysis[,]" *Liberty Mut. Ins.*

*Co. v. Broan-NuTone LLC*, --- F. Supp.3d ----, No. 21-CV-11986-DLC, 2024 WL 1836526, at *4

(D. Mass. Apr. 26, 2024) (quoting 921 § 19.6.4).

Defendant challenges Sobota's opinion that the soldering iron in the utility room and

discarded cigarettes were ruled out as potential causes of the fire.

First, it is apparent from Sobota's deposition testimony that the elimination of the soldering

iron as a potential cause was based on Flaherty's conclusions. Sobota acknowledged that soldering

irons can cause fires "[i]f on or energized[,]" Sobota Dep. at 87:19–21, but he relied upon the

results of Flaherty's investigation as to whether the soldering iron at issue here was on or energized

at the time of the fire, *id.* at 87:22–88:6. Indeed, Flaherty's report reflects that the soldering iron

was not energized at the time. *See* Flaherty Report at 5 ("The soldering iron had its power cord

wrapped around it and was not plugged in."). "Generally, it is permissible for an expert to rely

upon the 'opinions and findings of other experts' to reach his or her expert conclusion, but only if

'experts in their respective field would reasonably rely on the other expert's opinions and

findings.'"[2] *Funderburk v. S.C. Elec. & Gas Co.*, 395 F. Supp. 3d 695, 717 (D.S.C. 2019) (quoting *In re Wright Med. Tech. Inc., Conserve Hip Implant Prods. Liab. Litig.*, 127 F. Supp. 3d 1306, 1320 (N.D. Ga. 2015)); *see also Pulse Med. Instruments, Inc. v. Drug Impairment Detection Servs., LLC*, 858 F. Supp. 2d 505, 512 (D. Md. 2012) (citing cases). NFPA 921 expressly contemplates "review and analysis of the investigations of others" as a data collection activity appropriate for fire investigations. *Severn Peanut Co.*, 2014 WL 1056991, at *2 (quoting NFPA 921 § 4.4.3.2). Thus, the Court finds Sobota's elimination of the soldering iron as a potential cause to be based on reliable principles and methods.

Sobota ruled out discarded cigarettes as a potential source of the fire based on Fernandez's statement that he had last been in the basement utility room at around 10:00 a.m. on May 19, 2020:

> Q: All right. How, sir, were you able, in your opinion, to rule out an inadvertent discarded cigarette in the utility room that caused the fire?
>
> A: I believe my notes there it says the last time [Fernandez] was in that utility room was around 10:00 in the morning after he put the battery in there.

Sobota Dep., at 117:15–22.[3] Sobota acknowledged that Fernandez had told him that he had been smoking in the basement (though not in the utility room) at 4:15 p.m., two hours before the fire began, *id.* at 116:8–117:1; that a discarded cigarette can ignite a fire two hours later, *id.* at 117:9–14; and that a cigarette may be entirely consumed by the fire it creates, *id.* at 118:11–14.

---

[2]     Additionally, any relied-upon opinions and findings of other experts must satisfy the *Daubert* standard. *See Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 789 (7th Cir. 2017) ("[P]laintiffs cannot reasonably admit through Hill what they could not offer through Doughty."). The Court finds Flaherty's opinion ruling out the soldering iron as a potential cause of the fire to be admissible. Flaherty's conclusion is supported by the fact that, at the time of the fire, "[t]he soldering iron had its power cord wrapped around it and was not plugged in." Flaherty Report at 5.

[3]     According to Sobota's report, Fernandez stated during his interview that he "charged the battery in the Ryobi charger in the basement near his desk at approximately 0930 hours. After the battery was charged, he took the battery and charger and placed them on a shelf in the utility room." Sobota Report at 6.

Defendant takes issue with Sobota's reliance on Fernandez's account of his smoking activities on the day of the fire. ECF 28 at 15–16; ECF 40 at 4–6. Defendant points out purported inconsistencies on Fernandez's statements, *id.* at 4–5, and Sobota's acknowledgement during his deposition that witnesses often misremember, misstate, or misrepresent their activities in the time leading up to a fire, ECF 28 at 15–16; *see also* Sobota Dep., at 117:23–118:10. On these grounds, Defendant concludes that Sobota's ruling out of an improperly discarded cigarette as a potential cause of the fire is unreliable. ECF 28 at 16.

The Court is not persuaded by Defendant's arguments. The Court agrees with Defendant that it would be "inconsistent with NFPA standards" for a fire investigator to rely upon the conclusions of a lay witness as to the cause of a fire without conducting an objective examination of the evidence. *Bryte*, 429 F.3d at 478. The U.S. Court of Appeals for the Fourth Circuit has recognized, however, that a fire investigator may rely on information within the personal knowledge of lay witnesses. *See id.* at 477 ("[Fire investigator] was permitted to rely on what [lay witness] saw, but not on her conclusions about the cause of the fire."). Indeed, NFPA 921 specifically identifies "witness interviews" as an appropriate data collection task. *Severn Peanut Co.*, 2014 WL 1056991, at *2 (quoting NFPA 921 § 4.4.3.2). The fact that witness accounts are sometimes, or even often, unreliable does not render every witness report of every fact unreliable. It only underscores the importance that fire investigators take a wide range of information into consideration and form their conclusions based upon an analysis of all the relevant data. *See Adell Plastics*, 2019 WL 2524916, at *5.

Here, it is apparent that Sobota ruled out discarded cigarettes as a potential cause of the fire based not only on Fernandez's account but also on the fact that no evidence of cigarette remains were found in the utility room in or around the origin of the fire. *See* Sobota Dep. at 122:21–123:1.

10

In other words, the physical evidence, or lack thereof, was consistent with Fernandez's account. Defendant points out, as Sobota acknowledged, that cigarettes can be consumed entirely by a fire, and Sobota had investigated fires started by cigarettes in which no evidence of cigarettes remained in the area of origin. ECF 28 at 16; *see also* Sobota Dep. at 91:10–19. But these facts do not undermine the reliability of Fernandez's statements that he had not been in the utility room since found 10:00 a.m. the day of the fire and had not smoked or discarded any cigarettes in the utility room that day.

Defendant casts Fernandez's statements as "inconsistent," pointing out that, in his deposition, he denied smoking in the basement and did not recall telling Sobota that he sometimes smoked in the basement at his desk, as noted in Sobota's report. ECF 40 at 5; *see also* Fernandez Dep. at 92:2–94:8; Sobota Report at 4–5. This potential inconsistency between Sobota's report and Fernandez's deposition testimony is immaterial to Sobota's conclusion. Whether or not Fernandez smoked at his desk in the basement at times does not alter the fact, offered by Fernandez to Sobota, that he had not been in utility room within the window of time that a discarded cigarette could have started the fire. *See* Sobota Dep. at 117:15–22 ("I believe in my notes there it says the last time he was in that utility room was around 10:00 in the morning after he put the battery charger in there."). Sobota's report and attached photos indicate that Fernandez's desk was not located in the utility room where the fire started. *See* Sobota Report at 4–5, 60–61. And although, according to Sobota's report, Fernandez smoked in the basement within the window of time that could have started a fire at around 6:18 p.m., he did not smoke or discard his cigarettes in the utility room. *See* Sobota Report at 4–5 ("Mr. Fernandez smokes in the basement at his desk. He last smoked in the basement at approximately 1615 hours and put his butt in a shot glass on the desk. Mr. Fernandez

11

said that he does not smoke or deposit his butts in the utility room."); Sobota Report at 60–61 (photos of discarded cigarettes at Fernandez's desk).

The Court finds that Sobota's elimination of discarded cigarettes as a potential cause of the fire to be based on reliable principles and methods, that it is relevant, and that it could assist the jury in determining Defendant's liability for the fire. *See* Fed. R. Evid. 702. Sobota is qualified by education and experience to render this opinion. *See* ECF 38-2 (Sobota's CV). The probative value of this opinion is not substantially outweighed by any risk of unfair prejudice to Defendant. *See* Fed. R. Evid. 403. Defendant is, of course, free to challenge both Fernandez's factual account and Sobota's expert conclusions at trial.

In sum, the Court finds Sobota's first and fifth opinions to be admissible. Sobota's second, third, and fourth opinions shall be excluded based upon Plaintiff's concession, as explained *supra*. Accordingly, Defendant's motion to exclude Sobota's opinions will be granted in part and denied in part.

### C. Electrical Engineer C.J. Flaherty

Flaherty, an electrical engineer, came to the following three conclusions following his investigation of the fire at the subject property:

> 1. The Taronji-Fernandez residence fire was caused by the thermal runaway of the Ryobi 6 amp-hour 40-volt lithium battery Mr. Fernandez had used and charged earlier on the same day.
>
> 2. The thermal runaway of the Ryobi battery was most likely caused by the development of an internal short circuit in one of the cells due to a manufacturing defect.
>
> 3. Other possible sources of ignition in the area of fire origin on the shelving unit in the basement utility room of the Taronji-Fernandez residence were considered and ruled out.

Flaherty Report at 7. Defendant contends that Flaherty was unqualified to render these three opinions and that the testimony is based on unreliable methodology, is unhelpful to the trier of fact, and is unduly prejudicial. ECF 30.

### 1. Flaherty's Qualifications

Flaherty is a licensed electrical engineer with an advanced degree in electronical engineering and certification in fire and explosion investigations. *See* ECF 39-2 (Flaherty's CV). The Court recognizes that these credentials do not by themselves qualify Flaherty to testify as an expert as to every topic within the field of electrical engineering. He must demonstrate experience with or education on the specific issue before the Court. *See Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 392 (D. Md. 2001) (citing *Ancho v. Pentek Corp.*, 157 F.3d 512, 517 (7th Cir. 1998)).

The Court is satisfied that Flaherty has adequate scientific and technical knowledge of lithium-ion batteries to qualify him as an expert on this topic. While it is true that Flaherty does not have an academic background specializing in lithium-ion batteries, *see* Flaherty Dep., at 11:23–12:6, 15:9–15:23, and he has never designed or developed a lithium-ion battery, *see id.* at 14:20–15:3, he testified to having conducted research on lithium-ion batteries, *id.* at 12:3–15, and participated in "on-the-job training and observation" of "many fires involving lithium-ion batteries," *id.* at 13:5–8. Flaherty also testified that he "participated in testing for a . . . lithium metal battery" which was "generally applicable to lithium batteries." *Id.* at 13:8–14:19. The Court finds this on-the-job training, in combination with Flaherty's formal education in electrical engineering, to give Flaherty sufficient knowledge and experience to qualify him to offer the expert opinions reflected in his report. Insofar as Flaherty's background is not a "perfect fit" for his conclusions in this case, his lack of specialization as to lithium-ion batteries goes only to the weight

of his testimony, not its admissibility. *See Shreve*, 166 F. Supp. 2d at 392 (citing *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100–01 (10th Cir. 1991)).

Accordingly, the Court finds Flaherty to be qualified to offer the contested opinions regarding the thermal runaway of the subject battery pack. Additionally, Flaherty has sufficient training and experience in fire and explosion investigations to offer an opinion eliminating potential electrical sources of the fire at issue in this case.

### 2. Flaherty's Third Conclusion

Regarding Flaherty's third conclusion, Defendant contends that Flaherty's opinion ruling out discarded cigarettes as a cause of the fire must be excluded. ECF 30 at 14–16. Flaherty testified that he relied upon Sobota to address potential non-electrical sources of the fire, such as "inappropriately discarded smoking materials or any materials subject to self-heating." Flaherty Dep. at 117:5–9.

As previously noted, an expert may rely upon the "opinions and findings of other experts," as long as "experts in their respective field would reasonably rely on the other expert's opinions and findings[,]" *In re Wright Med. Tech. Inc.*, 127 F. Supp. 3d at 1320, and the relied-upon opinions and findings are supported by reliable principles and methods, *Gopalratnam*, 877 F.3d at 789. NFPA 921 identifies "review and analysis of the investigations of others" as an appropriate data collection task in the field of fire investigations. *Severn Peanut Co.*, 2014 WL 1056991, at *2 (quoting NFPA 921 § 4.4.3.2). And, as explained in Part II.B *supra*, Sobota's opinion eliminating discarded smoking materials as a potential source of the fire is reliable.

Accordingly, the Court rejects Defendant's challenge to Flaherty's third conclusion. The elimination of discarded cigarettes as a potential cause of the fire is relevant and could assist the

jury, and its probative value is not substantially outweighed by any risk of unfair prejudice to Defendant. *See* Fed. R. Evid. 403 & 702. Flaherty's third conclusion is admissible.

### 3. Flaherty's First and Second Conclusions

In his first and second conclusions, Flaherty opined that the fire at the subject property was caused by a thermal runaway of the subject battery pack, which "was most likely caused by the development of an internal short circuit in one of the cells due to a manufacturing defect." Flaherty Report at 7. The occurrence of a thermal runaway was supported by a CT scan Flaherty performed on recovered battery remnants. *Id.* at 4, 6; Flaherty Dep. at 92:12–15, 93:9–10. In his report, Flaherty explained, based on his scientific and technical knowledge, that "[t]hermal runaway can be caused by overcharging, over-discharging followed by charging, internal or external short circuits, and excessive environmental temperatures." Flaherty Report at 6. Defendant does not contest this proposition. Flaherty's conclusion that an internal short circuit likely caused the thermal runaway in this case was based on the lack of any feasible alternative cause given the available evidence, such as overcharging or an external source of the fire. *Id.* at 6–7; Flaherty Dep. at 94:23–96:5. Flaherty explained that an internal short circuit was a feasible potential cause of the thermal runaway and the fire at the subject property. *Id.* at 98:15–21; 101:7–19; 115:1–23.

Defendant challenges Flaherty's failure to identify or describe the precise manufacturing defect that caused the thermal runaway. ECF 32 at 7–8; ECF 42 at 3, 6, 10; *see also* Flaherty Dep. at 100:7–14. The Court is not persuaded by this argument. Flaherty explained that damage from the fire "would have likely masked or eliminated any evidence of a short circuit . . . preexisting the thermal runaway event." *id.* 96:14–17; *see also id.* 134:23–135:1. Flaherty reliably ruled out other potential causes of the fire apart from an internal short circuit in the subject batter pack. *See id.* at 94:23–96:5; Flaherty Report at 6–7; Under Maryland law, "a fact-finder [may] infer that a

product defect caused a plaintiff's injury where circumstantial evidence tends to rule out other causes . . . ." *Fireman's Fund*, 767 F. Supp. 2d at 557; *see also USAA Cas. Ins. Co. v. Dampp-Chaser Elecs. Corp.*, Civ. No. TDC-20-3484, 2023 WL 4934222, at *2–3 (D. Md. Aug. 1, 2023) ("An inference of a defect may be drawn from the happening of an accident, where circumstantial evidence tends to eliminate other causes, such as product misuse or alteration.") (quoting *Harrison v. Bill Cairns Pontiac, Inc.*, 549 A.2d 385, 390 (Md. Ct. Spec. App. 1988)). It is well established that "[i]n a circumstantial case the 'plaintiff need not explain specifically what constituent part of the product failed.'" *Riley v. De'Longhi Corp.*, 238 F.3d 414 (4th Cir. 2000) (unpub.) (quoting *Restatement (Third) of Torts: Products Liability* § 3 cmt. c.). "[Flaherty's] inability to identify a precise defect is therefore not fatal to the [Plaintiff's] effort to establish their case through indirect proof." *Id.*

Next, Defendant challenges the fact that Flaherty did not conduct physical testing of exemplar battery packs to test his theory that an internal short circuit causes the thermal runaway and then the fire. ECF 30 at 9–13; ECF 41 at 6–7; *see also* Flaherty Dep. at 100:23–101:2, 111:9–23, 119:13–17. Flaherty explained the practical difficulty of "insert[ing] an internal short circuit" into a lithium-ion battery. *Id.* at 100:23–101:2. Flaherty further explained that the only way to force such an internal short circuit is "to inject material" into it, and that tests involving driving a nail into a battery "[had] been done and sufficiently well documented" not to warrant repetition. *Id.* Moreover, "there's no indication that [the subject battery pack was] punctured in that way[,]" so Flaherty doubted the relevance of any results from a physical test in which an exemplar battery was punctured by foreign material. *Id.* The Court infers from Flaherty's testimony that such a test would not adequately replicate the sort of short circuit that could have occurred in this case.

Physical or experimental testing is not strictly required to test a hypothesis as to the cause of a fire. *See Woods Hole Oceanographic Inst. v. ATS Specialized, Inc.*, Civ. No. 17-12301-NMG, 2021 WL 9860239, at *5 (D. Mass. May 27, 2021) (discussing NFPA 921). Here, Flaherty testified that he tested his internal short circuit hypothesis "cognitively," by comparing it with other hypotheses as to how the fire started . *Id.* at 100:23–101:12. Defendant takes issue with Flaherty's cognitive testing, arguing that it "is not a reliable method to arrive at opinion [sic]." ECF 30 at 10. The Court disagrees. "NFPA 921 . . . does not require that physical, experimental, or laboratory type testing be performed in order to test a hypothesis. Rather, NFPA 921 specifically provides that deductive reasoning and cognitive testing may satisfy the testing requirement[.]" *Woods Hole Oceanographic Inst.*, 2021 WL 9860239, at *5 (citing *Ali v. Travelers Home and Marine Ins. Co.*, No. 1:17-cv-03192-ELR, 2019 WL 5106278, at *4 (N.D. Ga. Sept. 4, 2019)); *see also Werth v. Hill-Rom, Inc.*, 856 F. Supp. 2d 1051, 1063–64 (D. Minn. 2012) ("NFPA 921 § 4.3.6 provides that a hypothesis can be tested either physically by conducting experiments or analytically by applying scientific principles in 'thought experiments.'") (cleaned up); *Medina v. Daimler Trucks N. Am., LLC*, Civ. No. 10-623 JLL, 2014 WL 7405210, at *8 (D.N.J. Dec. 30, 2014) ("[T]he NFPA 921 makes clear that an expert may test his or her hypothesis either cognitively or experimentally."). "Deductive reasoning and cognitive testing are common methods of determining the cause and origin of fires." *Ali*, 2019 WL 5106278, at *4. Cognitive testing involves "the use of a person's thinking skills and judgment to evaluate the empirical data and challenge the conclusions of the final hypothesis." *Id.* at *4–*5 (quoting *Great N. Ins. Co. v. Ruiz*, 688 F. Supp. 2d 1362, 1373 (S.D. Ga. 2010)).

There is no indication here that Flaherty deviated from this accepted method of determining the cause of a fire. Flaherty compared the internal short circuit hypothesis to hypotheses that the

fire started externally to the subject battery pack. Flaherty Dep. at 100:23–101:12. Because there was no evidence to support any source of the fire outside the subject matter pack, in Flaherty's estimation, he was left with the conclusion of an internal failure within the subject battery pack. *Id.*; *see also* Flaherty Report at 4–7. In short, Flaherty collected data, analyzed it, developed a hypothesis based on the data collected and analyzed and based on his technical knowledge, tested the theory, and reached a conclusion, in conformity with principles and methods controlled by the generally accepted standards of NFPA 921. *See Adell Plastics*, 2019 WL 2524916, at *5.

Thus, the Court finds Flaherty's first and second conclusions to be admissible. They are relevant and could assist the jury on the issue of causation, and their probative value is not substantially outweighed by any risk of unfair prejudice to Defendant. *See* Fed. R. Evid. 403 & 702; *cf. Breidor v. Sears, Roebuck & Co.*, 722 F.2d 1134, 1138 (3d Cir. 1983) ("Where a fire investigator identifies the cause of fire in terms of probabilities (as opposed to mere possibilities) by eliminating all but one reasonable potential cause, such testimony is highly probative.") (citing *Gichner v. Antonio Troiano Tile & Marble Co.*, 410 F.2d 238, 247 (D.C. Cir. 1969)).

Defendant's motion to exclude Flaherty's opinions will be denied.

## III.   MOTION FOR SUMMARY JUDGMENT

### A.  Standard of Review

A court may grant a party's summary judgment motion under Rule 56 if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for

summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis removed).

A fact is "material" if it "might affect the outcome of the suit under the governing law[,]" and a genuine issue as to material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *see also Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016). A party can establish the absence or presence of a genuinely disputed fact through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). The court must view all the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmovant, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), but the court is not permitted to weigh the evidence, make credibility determinations, or decide the truth of disputed facts, *Anderson*, 477 U.S. at 249.

### B. Analysis

Defendant moves for summary judgment on all claims in the Complaint. ECF 31 & 32. In its opposition, Plaintiff confirms that its sole theory of liability is that a manufacturing defect in the subject battery pack caused the fire at the subject property. ECF 37 at 4. Plaintiff concedes that it lacks adequate evidence to proceed on any other theory of liability. *Id.*

A plaintiff in a products liability case under Maryland law must establish "(1) 'the existence of a defect'; (2) 'the attribution of the defect to the seller'; and (3) 'a causal relation between the defect and the injury.'" *USAA*, 2023 WL 4934222, at *2–*3 (quoting *Virgil v. "Kash N' Karry" Serv. Corp.*, 484 A.2d 652, 656 (Md. Ct. Spec. App. 1984)); *see also Riley*, 238 F.3d 414. To avoid summary judgment on a manufacturing defect claim, a plaintiff "must offer evidence

of some indication that the product at issue either was not manufactured in accordance with the product's design specifications or that during the manufacturing process the [product] was assembled improperly or that some other error occurred." *Shreve*, 166 F. Supp. 2d at 411 (citing *Singleton v. Int'l Harvester Co.*, 685 F.2d 112, 114 (4th Cir. 1981), and *Phipps v. Gen. Motors Corp.*, 363 A.2d 955, 959 (1976)). The mere occurrence of an accident cannot support a presumption of a product defect, but "the addition of any facts that provide proof of a defect beyond that of conjecture or speculation may be sufficient to withstand summary judgment." *Assurance Co. of Am. v. York Int'l, Inc.*, 305 F. App'x 916, 921 (4th Cir. 2009) (citing *Jensen v. Am. Motors Corp.*, 437 A.2d 242, 245 (1981), and *C & K Lord, Inc. v. Carter*, 536 A.2d 699, 709–10 (1988)); *see also Parker v. Allentown, Inc.*, 891 F. Supp. 2d 773, 780 (D. Md. 2012).

"[A] plaintiff may prove a product defect in one of three ways: (1) direct proof based on the nature of the accident and the product involved; (2) opinion testimony of an expert witness; or (3) inference of a defect based on circumstantial evidence." *Fireman's Fund*, 767 F. Supp. 2d at 557 (citing *Assurance Co. of Am.*, 305 F. App'x 916); *see also Riley*, 238 F.3d 414 ("In instances when the plaintiff cannot prove the existence of a defect through direct evidence, he or she is allowed to introduce circumstantial evidence from which an inference of a product defect can be drawn."). Maryland law permits an inference that "a product defect caused a plaintiff's injury where circumstantial evidence tends to rule out other causes . . . ." *Fireman's Fund*, 767 F. Supp. 2d at 557; *see also Harrison*, 549 A.2d 385, 390 ("An inference of a defect may be drawn from the happening of an accident, where circumstantial evidence tends to eliminate other causes, such as product misuse or alteration."); *USAA*, 2023 WL 4934222, at *2–3 (same).

Maryland courts consider five factors to determine "whether a plaintiff can avail itself of the 'indeterminate defect' theory: '(1) expert testimony as to possible causes; (2) the occurrence

of the accident a short time after the sale; (3) same accidents in similar products; (4) the elimination

of other causes of the accident; (5) the type of accident that does not happen without a defect.'"

*Assurance Co. of Am.*, 305 F. App'x at 921 (quoting *Harrison*, 549 A.2d at 390); *see also Ford*

*Motor Co. v. Gen. Accident Ins. Co.,* 779 A.2d 362, 371 & n.16 (2001) (adopting five-factor test

from *Harrison*)). "[T]here is no precise formulation as to how to consider these factors on a motion

for summary judgment[.]" *Assurance Co. of Am.*, 305 F. App'x at 921–22. But "[t]o the extent that

a plaintiff's showing on one or more of these factors cuts against these conclusions, then the

strength of the inference of a defect weakens and plaintiff risks the entry of summary judgment for

defendant." *Shreve*, 166 F. Supp. 2d at 408–09, *quoted in Assurance Co. of Am.*, 305 F. App'x at

922.

The second *Harrison* factor clearly favors Plaintiff. Defendant concedes this point. *See*

ECF 32 at 11. The fire occurred within two months of Fernandez's purchase of the subject battery

pack. Fernandez Dep. at 53:21–54:6. The purchase was sufficiently close in time to the fire to

factor in favor of inferring a product defect. *See Redford v. SC Johnson & Son, Inc.*, 437 F. Supp.

2d 391, 396 (D. Md. 2006) (purchase one month-and-a-half before the fire sufficient for second

*Harrison* factor to favor plaintiff); *Watson v. Sunbeam Corp.*, 816 F. Supp. 384, 388 (D. Md. 1993)

(10-month period sufficiently short for second *Harrison* factor to favor plaintiff).

The first *Harrison* factor also counsels against granting Defendant summary judgment on

Plaintiff's manufacturing defect claims. Plaintiff offers the expert testimony of Flaherty, an

electrical engineer, to show that it was at least possible that an internal short circuit arising from a

defect in the subject battery pack caused a thermal runaway that resulted in the fire at the subject

property. *See* Flaherty Report at 6–7; Flaherty Dep. at 98:15–21; 101:7–19; 115:1–23. As

explained in Part II.C.3 *supra*, Flaherty's testimony is based on his scientific and technical

knowledge and an application of reliable principles and NFPA 921-endorsed methods to evidence obtained from the fire investigation and is therefore admissible under Fed. R. Evid. 702. Defendant challenges Flaherty's failure to identify a specific manufacturing defect. *See* ECF 32 at 7–8; ECF 42 at 3, 6, 10. As explained in Part II.C.3, however, Flaherty need not identify a specific manufacturing defect in order to opine reliably that such a defect caused the fire. *See Riley*, 238 F.3d 414 ("In a circumstantial case the plaintiff need not explain specifically what constituent part of the product failed. . . . [Electrical engineering expert's] inability to identify a precise defect is therefore not fatal to the [plaintiffs'] effort to establish their case through indirect proof.") (cleaned up). Thus, Flaherty's testimony is adequate to offer a manufacturing defect in the subject battery pack as a possible cause of the fire. *See id.* ("[T]he first *Harrison* factor only requires testimony as to *possible* causes.").

Relatedly, the expert opinions of both Flaherty and Sonota tend to rule out other potential causes of the fire and therefore make a sufficient showing on the fourth *Harrison* factor. Sobota eliminated improperly discarded smoking materials as a potential cause based on Fernandez's statements that he had not been in the utility room for several hours before the fire started, did not smoke in the utility room, and did not discard cigarettes in the utility room. Sobota Report at 5–6; Sobota Dep. at 117:15–22. As discussed Part II.B *supra*, Flaherty ruled out all potential electrical sources of the fire apart from a thermal runaway in the subject battery pack. *See* Flaherty Report at 6–7; Flaherty Dep. at 94:23–96:5, 100:23–101:12.

In sum, the opinions of Plaintiff's experts and evidence from the fire investigation upon which they are based offer "some indication" that an error occurred in the manufacturing of the subject battery pack and are therefore sufficient to overcome summary judgment. *Shreve*, 166 F. Supp. 2d at 411. On Defendant's motion, the Court must view inferences drawn from the

evidentiary record in the light most favorable to Plaintiff. *Matsushita Elec. Indus.*, 475 U.S. at 587. Although Plaintiff has made no showing on the third *Harrison* factor, its showing on most of the *Harrison* factors is adequate for a reasonable trier of fact to infer that a manufacturing defect existed in the subject battery pack that caused the fire at the subject property. *See Harrison*, 549 A.2d at 390 (1988) (inference of a product defect may be supported by "circumstantial evidence [that] tends to eliminate other causes"). Plaintiff alleges that any such defect is attributable to Defendant as manufacturer, ECF 2 at 2, and Defendant's motion does not place this fact at issue. Therefore, summary judgment cannot be entered in Defendant's favor on Plaintiff's manufacturing defect claims.[4]

Accordingly, Defendant's Motion for Summary Judgment shall be denied as to Plaintiff's manufacturing default claims.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Exclude Opinions of Jim Sobota (ECF 28) is granted in part and denied in part; Defendant's Motion to Exclude Opinions of C.J. Flaherty (ECF 30) is denied; and Defendant's Motion for Summary Judgment (ECF 31) is granted in part and denied in part. Sobota's second, third, and fourth conclusions are excluded. Summary

---

[4]      *See USAA Cas. Ins. Co. v. Dampp-Chaser Elecs. Corp.*, Civ. No. TDC-20-3484, 2023 WL 4934222, at *2–*3 (D. Md. Aug. 1, 2023) (denying summary judgment where electrical engineer identified internal failures in an appliance as possible causes of the fire and fire investigator ruled out alternative sources, even though electrical engineer "could not reach a conclusion as to 'a definitive point of failure[]'" due to severe damage in the appliance's internal components); *Watson v. Sunbeam Corp.*, 816 F. Supp. 384, 389 (D. Md. 1993) (denying defendant's motion for summary judgment where "three of the *Harrison* factors favor plaintiffs (expert testimony of possible causes, the timing of the accident and the elimination of other causes), one is essentially neutral (the involvement of the same product in similar accidents) and one favors defendants (the type of accident)"); *Riley v. De'Longhi Corp.*, 238 F.3d 414 (4th Cir. 2000) (reversing denial of summary judgment where plaintiffs satisfied four of the *Harrison* factors).

judgment is denied as to Plaintiff's manufacturing defect claims and granted as to Plaintiff's remaining claims.

A separate Order will issue.

9/13/24
_____
Date

/S/
_____
Matthew J. Maddox
United States District Judge